**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

VITO V. COSTA, MARION P. COSTA a/k/a:
MARION F. COSTA, "John Doe," "Richard Roe,":
"Jane Doe," "Cora Coe," "Dick Moe" and "Ruby:
Poe."

               Third Party Plaintiffs,

    v.

DAN DeKLEINE, MORGAN FUNDING CORP.,:
DANIEL MACKLE, MOHAMMAD:
HAMMEEDUDDIN, BRESSLER & DUYK,:
MARK BRESSLER, DAVID BRESSLER,:
MOHAMMED HAMMEEDUDDIN, GEOFF:
TRIPODI, CHRISTINE CASTANARIS, JOHN:
DOE NOS. 1-20, ABC CORP. NOS. 1-20,

               Third Party Defendants.

Civil Action No.

# 08 CIV. 4915

**NOTICE OF REMOVAL**

**JUDGE ROBINSON**

---

**TO:    THE HONORABLE JUDGES OF THE SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF WESTCHESTER**

### THIRD PARTY DEFENDANTS' NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Third Party Defendants Bressler-Duyk, Mark Bressler, and David Bressler (collectively hereinafter "the Bressler Third Party Defendants") file the instant Notice of Removal of the above-entitled case now pending in the Supreme Court of Westchester County, State of New York, bearing Index No.: 03295108, to remove the foregoing case to the United States District Court for the Southern District of New York. In support, the Bressler Third Party Defendants state:

### THE INSTANT NOTICE OF REMOVAL IS TIMELY

1.    Third Party Plaintiffs commenced the instant action in the Supreme Court of the State of New York, County of Westchester on or about April 16, 2008, by the filing of their Third Party Complaint. The Bressler Third Party Defendants received the

Third Party Complaint on or about April 28, 2008. This Notice of Removal is timely filed as required by 28 U.S.C. §1446 because it is being filed within thirty (30) days after receipt of the copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

## STATE COURT PROCEEDINGS ATTACHED

2.      Attached hereto as Exhibit "A" is a copy of the Costa Third Party Complaint served in the within action.

## INTRA DISTRICT ASSIGNMENT

3.      This Notice of Removal and all exhibits are being filed in the United States District Court for the district and division in which the state court action is pending. See 28 U.S.C. § 1446(a).

## BACKGROUND

4.      Third Party Plaintiffs commenced this action to recover money damages allegedly sustained as a result of a refinance transaction, wherein they did not receive a loan they contend they were promised.  Third Party Plaintiffs assert a myriad of claims such as violations of the Truth in Lending Act, 15 U.S.C. §1601 *et seq* (hereafter "TILA") and violations of the Real Estate Settlement Practices Act, 12 U.S.C. §2601 *et seq* (hereafter "RESPA").

5.      It appears that the Third Party Complaint is in response to an action commenced by Plaintiff/Counterclaim Defendant Indy Mac to collect on the mortgage note.

6.      The Third Party Plaintiffs responded to the believed collection/foreclosure type of action by asserting this pleading in which they assert separate and independent

claims against the Third Party Defendants, including the Bressler Third Party Defendants, seeking damages, compensatory, treble and punitive in nature, against any one involved in their refinance real estate transaction alleging federal statute violations as well as fraud and negligence stemming and/or associated with the alleged federal statute violations.

7.     The Bressler Third Party Defendants' are lawyers who served as settlement agents in the Third Party Plaintiff Costa's closing.

8.     This Third Party Complaint is similar and akin to a multitude of pending actions filed by Third Party Plaintiffs' law firm in the United States District Court for the District of New Jersey. They include, but are not limited to the following: *DeLaCruz v. Morgan Funding, et al.*, Civil Action No. 2:07-cv-2334-PGS-ES; *Malone v. Morgan Funding et al.*, Civil Action No. 2:07-cv-4124-PGS-ES; *Ortiz v. Morgan Funding, et al.*, Civil Action No. 2:07-cv-5078-PGS-ES; *Santillan v. Morgan Funding, et al.*, Civil Action No. 2:08-cv-208-PGS-ES; and *Thurston v. Morgan Funding, et al.*, Civil Action No. 2:08-cv-194-PGS-ES. These matters as well as the Third Party Plaintiffs' Third Party Complaint all present similar factual allegations and legal claims.

## JURISDICTION AND GROUNDS FOR REMOVAL

9.     As related above, Third Party Plaintiff's allegations are based on a variety of federal statutes such as violations of the Truth in Lending Act, 15 U.S.C. §1601 *et seq* (hereafter "TILA") and violations of the Real Estate Settlement Practices Act, 12 U.S.C. §2601 *et seq* (hereafter "RESPA"); therefore this matter is one of a federal question. Accordingly as Third Party Plaintiffs are seeking remedies pursuant to federal statutes, this matter is more appropriately heard in the Southern District of New York (if not

thereafter transferred to the District of New Jersey where the other similar matters are pending).

10.    28 U.S.C. §1441(c) permits the removal of the entire cause of action when jurisdiction is conferred by 28 U.S.C. §1331. The consent of the other defendants in the within action are not required where removal is sought pursuant to 28 U.S.C. §1441.

11.    Accordingly, Third Party Plaintiff's claims present questions of federal law and removal is appropriate.

## NOTICE

12.    Promptly after filing the instant Notice of Removal, the Bressler Third Party Defendants will provide written notice of this filing to the Third Party Plaintiff, pursuant to 28 U.S.C. §1446(d).

**WHEREFORE**, the Bressler Third Party Defendants pray that this action proceed in this Court as an action properly removed thereto.

Respectfully submitted this 28th day of May, 2008

RESPECTFULLY SUBMITTED,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Richard L. Reiter
Attorneys for Third Party Defendants
BRESSLER-DUYK, MARK BRESSLER, AND
DAVID BRESSLER
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000

Dated:      May 28, 2008

TO:    Mercedes Diego, Esq.
Koles, Burke & Bustillo, L.L.P.
2600 Kennedy Blvd.
Jersey City, New Jersey 07306
Attorneys for Third Party Plaintiffs

2002320.1

# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF WESTCHESTER**

-------------------------------------------------------X

VITO V. COSTA, MARION P. COSTA a/k/a
MARION F. COSTA, "John Doe," "Richard
Roe," "Jane Doe," "Cora Coe," "Dick Moe"
And "Ruby Poe."

                    Date Filed: 4/16/08
                    INDEX NO.: 08295108

                Third-Party Plaintiffs,

            -against-

DAN DeKLEINE, MORGAN FUNDING CORP.,          **SUMMONS**
DANIEL MACKLE, MOHAMMAD
HAMMEEDUDDIN, BRESSLER & DUYK,
MARK BRESSLER, DAVID BRESSLER,
MOHAMMAD HAMMEEDUDDIN, GEOFF
TRIPODI, CHRISTINE CASTANARIS,
JOHN DOE NOS. 1-20, ABC CORP. NOS. 1-20,

                Third-Party Defendants.

-------------------------------------------------------X

**RECEIVED**
APR 16 2008
TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

TO THE ABOVE NAMED THIRD PARTY DEFENDANTS

        YOU ARE HEREBY SUMMONED to answer the third party complaint in this action
and to serve a copy of your answer, or, if the third party complaint is not served with this
summons, to serve a Notice of Appearance on the Third Party Plaintiff's attorneys within 20
days after the service of this summons, exclusive of the day of service (or within thirty days after
the service is complete if this summons is not personally delivered to you within the State of
New York); and in case of your failure to appear or answer, judgment will be taken against you
by default for the relief demanded herein.

        Third Party Plaintiff designates Westchester County as the place of trial of this action.
The basis of venue designated is the location of the real property which is the subject of this
action.

Dated: New York, New York
        April 10, 2008

                        Koles, Burke & Bustillo, LLP
                        Attorneys for Third-Party Plaintiffs

APR 2 8 2008
BRESSLER LAW FIRM

                        By: _____
                        Mercedes Diego, Esq.
                        233 Broadway, Suite 2200
                        New York, New York 10279
                        (212) 524.6833

04/29/08  15:18 FAX 732 494 9464      THE BRESSLER LAW FIRM                    ☒004

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF WESTCHESTER**

------------------------------------------X        Index No:

VITO V. COSTA, MARION P. COSTA a/k/a
MARION F. COSTA, "John Doe," "Richard
Roe," "Jane Doe," "Cora Coe," "Dick Moe"
And "Ruby Poe."

        Third-Party Plaintiffs,        **THIRD PARTY COMPLAINT**

    -against-

DAN DeKLEINE, MORGAN FUNDING CORP.,
DANIEL MACKLE, MOHAMMAD
HAMMEEDUDDIN, BRESSLER & DUYK,
MARK BRESSLER, DAVID BRESSLER,
MOHAMMAD HAMMEEDUDDIN, GEOFF
TRIPODI, CHRISTINE CASTANARIS,
JOHN DOE NOS. 1-20, ABC CORP. NOS. 1-20,



        Third-Party Defendants.

------------------------------------------X

    The Third Party Plaintiffs, Vito V. Costa and Marion P. Costa, by their attorneys,

complains of the third party defendants above named and allege:

    1.    The Defendants/Third Party Plaintiffs, Vito V. Costa and Marion P. Costa, own real

        property located at 60 Interlaken Avenue, New Rochelle, New York 10801.

    2.    The Third Party Defendant, Daniel DeKleine, works as a mortgage salesman and

        worked for Morgan Funding Corp. at 26 Journal Square, Jersey City, NJ 07306.

    3.    The Third Party Defendant, Morgan Funding Corp., is or was a licensed mortgage

        broker or banker licensed in the State of New Jersey and State of New York with

        offices located at 26 Journal Square, Jersey City, New Jersey.

    4.    The Third Party Defendant, Daniel Mackle, is the Chief Executive Officer and/or

        President of Morgan Funding Corp.

5.  The Third Party Defendants, David Bressler and Marc Bressler, are Attorneys at Law of the State of New York and participated in the Costa transaction as the settlement agent and/or represented the interests of Morgan Funding and/or IndyMac Bank. They practice law as partners in the Bressler & Duyk Law Firm located at 60 State Highway 27, Edison, New Jersey 08820.

6.  The Third Party Defendant, Marc Bressler, is the partner of David Bressler and works with him at Bressler & Duyk.

7.  The Third Party Defendants, Bressler & Duyk law-firm operates out of 60 State Highway 27, Edison, New Jersey 08820 and was involved in the Costa transaction as settlement agent.

8.  The Third Party Defendants, IndyMac Bank, FSB is a federally chartered bank, with a headquarters at 888 East Walnut Street, Pasadena, California. Hereinafter, IndyMac Bank, FSB is sometimes hereinafter referred to as "IndyMac Bank or IndyMac Bank."

9.  The Third Party Defendant, Christine Castenaris, is or was an IndyMac Bank employee. Ms. Castenaris worked out of the Morgan Funding Office located at 26 Journal Square from approximately December 2004 until April 2007.

10. The Third Party Defendant, Geoff Tripodi, is or was an IndyMac Bank employee. Mr. Tripodi worked out of the Morgan Funding Office located at 26 Journal Square from approximately December 2004 until April 2007.

11. The Third Party Defendants, ABC Corp. No. 1 or John Doe No. 6 is the assignee or purchaser of the Note or Mortgage on the Costa property. As such, they are a party to this matter as they would be responsible for TILA violations that were apparent on

the face of the documents.  They reviewed or should have reviewed said documents and knew or should have known of the defects set forth therein.

12.  The Third Party Defendants, John Doe Nos. 1-30 are fictitious names for Defendants whose true identities is not yet known.

13.  The Third Party Defendants, ABC Corp. Nos. 1-30 are fictitious names for corporate Defendants whose true identities is not yet known.  John Doe No. 1 and John Doe No. 2 are employees or officers of Morgan Funding Corp.

14.  The Third Party Defendants, Mohammad Hammeeduddin is ostensibly a Notary Public of the State of New York.  He attended the closing of the Costa refinance.

## NATURE OF SUIT

15.  The Third Party Plaintiffs bring this action for violations of the federal Truth in Lending Act, breach of contract, negligence, fraud, legal malpractice, consumer protection act, other violations of State and Federal Law and other claims and causes of action arising from the refinancing of their mortgage on their home.  They assert that they received mortgages with much higher interest rates than they were promised and that the defendants failed to provide them with the required timely disclosures about these loans and that various loan documents had false and misleading terms and information which fraudulently induced them into entering into these mortgages.

## SUBSTANTIVE ALLEGATIONS

16.  Approximately six months prior to the IndyMac refinance, the Third Party Plaintiffs refinanced with Dan DeKleine and Morgan Funding Corp. and HSBC.

17. The Mortgage Broker on the transaction was Morgan Funding Corp. and Dan DeKleine was Morgan's salesman for this closing.

18. The Third Party Plaintiffs were referred to Dan DeKleine of Morgan Funding Corp. by a friend. In December of 2005, Mr. DeKline advised Mr. and Mrs. Costa that they should refinance with Intervale Mortgage Corp. but that in four to five months, he could get them into a "special" mortgage consisting of an interest rate of 2.85% fixed for 5 years with IndyMac Bank. Since Mr. DeKleine's offer was so good, the Third Party Plaintiffs agreed and refinanced with Intervale Mortgage Corp. on December 23, 2005 and on May 9, 2006 refinanced with Dan DeKleine and Morgan Funding Corp. again with IndyMac Bank. At each closing, the Third Party Plaintiffs paid excessive closing costs to Morgan Funding Corp., Dan DeKleine, the lenders and others. Mr. DeKleine made fraudulent representations about the terms of the loan to the Third Party Plaintiffs to induce them to refinance twice in a six month span.

19. In the second refinance, Mr. DeKleine promised a mortgage with a 2.85% interest rate fixed for 5 years with IndyMac Bank.

20. However, Mr. DeKleine provided the Third Party Plaintiffs with a mortgage product that was vastly different than what he promised.

21. Because of these promises and statements, the Third Party Plaintiffs agreed to refinance their property even though they had just refinanced 5 months prior to entering into the IndyMac Bank refinance.

22. The mortgage that Mr. DeKleine gave the Third Party Plaintiffs carried approximately only one month of a fixed interest rate of 2.85% interest, but the mortgage gave the Third Party Plaintiffs the option to continue to make payments for an extended period of time as though 2.85% was the true interest rate with the difference between the interest being charged and the partial interest being paid being added to the loan principal causing the loan balance to increase rather than decrease as in a traditional mortgage. The interest rate adjusted significantly

upward about one month after the closing to a much higher variable interest rate. In other words, the loan allowed "negative amortization," by allowing monthly payments less than the amount of the interest accruing and less than that owed under a traditional 30 year fixed rate mortgage. These IndyMac loans are sometimes called "Option-Adjustable Rate Mortgages" (Option ARMs) or "12 MAT Loans."

23. IndyMac Bank (1) knew that the Third Party Plaintiffs were being misled about essential loan terms and (2) knew that misleading documents were being given to them concerning this loan.

24. From 2004 until 2007, IndyMac Bank's employees, Christine Castenaris and Geoff Tripodi, were stationed inside the Morgan Funding's Office alongside the mortgage brokers while they were defrauding the borrowers.

25. According to Morgan Funding, Ms. Castenaris and Mr. Tripodi provided training to Morgan's brokers. This training aided and abetted Morgan Funding's defrauding many borrowers into taking out OPTION ARM loans without understanding the real loan terms.

26. Option ARM loans have been called the "riskiest and most complicated home loan product ever created" and have been termed a "neutron bomb" that will "kill all the people but leave the houses standing" by an economist at the Ford Foundation.

27. Option ARMs were developed in the early 1980s as a cash flow tool for wealthy home buyers who wanted the option to pay low payments for a period and pay off large portions of their mortgage all at once.

28. However, in later years of the recent housing boom, lenders began selling Option ARMs to ordinary borrowers as a means to purchase larger and more expensive houses, without disclosing the risks.

29. Up to 80 percent of all Option ARM borrowers make only the minimum payment each month, often because they are not properly informed about the terms of loan.

30. Lenders pushed Option ARM loans because they are very profitable, at least on paper. Under generally accepted accounting principals ("GAAP") the entire interest payment due could be booked as income even when only the minimum was paid. This accounting practice enables lenders to use Option ARM loans as a means to generate phantom profits, thereby boosting the stock price.

31. When marketing Option ARM Mortgages, lenders and brokers routinely touted the minimum payments and downplayed or failed to disclose the resulting negative amortization.

32. The Federal Trade Commission recently issued warnings to many media outlets warning them about deceptive advertisements that mortgage brokers were making.

33. On or about September 14, 2007, the Federal Trade Commission issued the following statements on their website: "The Federal Trade Commission is warning mortgage brokers and lenders, and media outlets that carry their advertisements for home mortgages, that some of the advertising claims currently appearing in Web sites, newspapers, magazines, direct mail, and unsolicited e-mail and faxes may violate federal law. 'Many mortgage advertisers are making potentially deceptive claims about incredibly low rates and payments, without telling consumers the whole story - for example, that these low rates and payments apply for a short period only and can go up substantially after the loan's introductory period,' said Lydia Parnes, Director of the FTC's Bureau of Consumer Protection. 'Home ownership is the American dream, but it can become a nightmare for consumers who don't have the information they need to understand the terms of their mortgage.' In warning letters, the agency is advising more than 200 advertisers and media outlets that some mortgage ads are potentially deceptive or in violation of the Truth in

Lending Act. The ads, including some in Spanish, were identified in June during a nationwide review focused on claims for very low monthly payment amounts or interest rates, without adequate disclosure of other important loan terms. For example, some ads touted rates as low as "1%" but failed to disclose adequately:

- that the stated rate was a "payment rate" – not the interest rate – that applied only during the loan's initial period;

- that low advertised payments applied for only a short period; and

- the loan's Annual Percentage Rate, the uniform measure of the cost of credit that enables consumers to shop for and compare mortgage offerings.

- Some ads promoted only incredibly low monthly payments but failed to disclose adequately the terms of repayment, including payment increases and a final balloon payment."

34. Morgan Funding Corp., Dan DeKleine and its other salesmen routinely used fraudulent flyers or mailings and marketing materials that used false and/or misleading language.

35. An example of their false and misleading marketing materials is attached as **Exhibit A** to this Complaint, which is a copy of one given to another borrower.

36. Morgan Funding Corp. and its owners and employees routinely defrauded borrowers.

37. Mr. DeKleine did not tell the Third Party Plaintiffs that the low interest rates attached to the IndyMac loan would expire in approximately one month after the closing occurred.

38. Instead, Dan DeKleine merely told the Third Party Plaintiffs that the interest rate on the mortgage would be 2.85% fixed for 5 years.

39. Around the same time, Mr. DeKleine also defrauded the Third Party Plaintiff's brother using the same fraudulent tactics and promises.

40. Mr. DeKleine never told the Third Party Plaintiffs that the scheduled payments would not cover principal and interest, let alone all of the interest owed. In fact, Mr. DeKleine advised the Third Party Plaintiffs that the regular scheduled payment covered both principal and interest.

41. Mr. DeKleine and no one else at Morgan Funding, ever explained to the Third Party Plaintiffs that by making the scheduled payments on this mortgage that it would cause "Negative Amortization" which would cause the loan balance to go up instead of down because the scheduled payment covered only part of the interest being charged by the lender each month.

42. On May 24, 2006, Edwin Plata admitted to Dilson Almanzar, (a Plaintiff in a related case pending in the Federal Court District of New Jersey), during a telephone conversation which was recorded, that his clients did not understand the IndyMac Bank OPTION ARM loans he gave them. A copy of the transcript of the recording is attached as **Exhibit B.**

43. Edwin Plata also indicated in that telephone call with Dilson Almanzar that IndyMac Bank's employee misled Mr. Plata or otherwise provided inaccurate information about the terms of their OPTION ARM loan programs which led him to relay that information to his clients. Upon information and belief, Mr. Tripodi and/or Ms. Castenaris, are the ones Mr. Plata was referring to.

44. Mr. Plata was already disbarred from the National Securities Association Dealers (NASD) from trading securities.

45. Mr. Plata was disbarred from the NASD for unethical conduct.

46. Mr. Plata also told Mr. Almanzar that many of his clients got this misinformation and that he was now getting complaints about it. This was also admitted during that recorded call.

47. Morgan Funding and Daniel Mackle deliberately employed individuals that they knew or should have known would defraud consumers.

48. Morgan Funding, Daniel Mackle and their salesmen exhibited a pattern and practice of defrauding consumers on these IndyMac Bank loan transactions into believing that the "teaser rate" was the real interest rate for up to sixty months.

49. Morgan Funding Corp., Dan DeKleine, IndyMac Bank, and all other defendants failed to properly warn the Third Party Plaintiffs what the real or full terms of the loan were.

50. Morgan Funding, Dan Mackle and their salesmen exhibited a pattern and practice of defrauding borrowers into taking IndyMac and other bank's Option ARM loans by telling them that either the teaser rate was good for a longer period of time, or that their payments were fully amortizing, when they were not.

51. To the extent that the Defendants may have ever provided any written information contrary to what Mr. DeKleine and Morgan Funding Corp. promised the Third Party Plaintiffs, that information was confusing, contradictory, inadequate, hidden and otherwise legally insufficient.

52. By entering this transaction for his Property, it cost the Third Party Plaintiffs more money than was promised.

53. Third Party Plaintiffs were defrauded.

54. Dan DeKleine did not explain to the Third Party Plaintiffs that if they made the regularly scheduled payments, that their loan principal would increase every month on this mortgage.

55. Dan DeKleine and Morgan Funding Corp. did not advise Third Party Plaintiffs that the loan would create "negative amortization" if the regularly scheduled payments were made on the loan.

56. Dan DeKleine and Morgan Funding Corp. and its agents, servants and employees owed a duty to disclose what the terms of the loans really were.

57. Dan DeKleine and Morgan Funding Corp. knew or should have known that the Third Party Plaintiffs did not understand the essential terms of the documents that they were executing.

58. IndyMac Bank, knew or should have known, based on their own review of the subject loan file, and/or previous reviews of other Option Arms that the Third Party Plaintiffs were misled about essential loan terms and/or were not getting what they were promised and/or that the proper and required notices were not timely furnished to the Third Party Plaintiffs or not furnished at all.

59. Especially given that IndyMac Bank had employees working at Morgan's Office, IndyMac Bank knew what was occurring at this place of business.

60. IndyMac Bank's employees who reviewed other 12 MAT Loan files discovered, or should have discovered, instances of fraud.

61. Before Third Party Plaintiffs entered this transaction, IndyMac Bank and its employees discovered, or should have discovered, that fraud was frequently occurring in their 12 MAT Products wherein mortgage brokers were misleading their borrowers into these loans.

62. Before Third Party Plaintiffs entered this transaction, IndyMac Bank and its employees discovered or should have, that Defendant Morgan Funding Corp. was misleading their borrowers into these Option Arm Teaser Rate Mortgages.

63. Despite having actual or constructive notice of Morgan Funding Corp.'s misleading borrowers about the terms of these loans, Defendant IndyMac Bank and their employees, including the heads of the Underwriting Department and Chief Compliance Officer(s) decided to continue to allow them to submit and then fund these mortgages to borrowers and thereby reaped the financial benefits of Morgan Funding's bait and switch scam.

64. The Defendants made fraudulent promises, assurances and statements which the Third Party Plaintiffs relied upon, in order to induce them into entering and completing the mortgage contracts.

65. IndyMac Bank's agents, servants or employees, including Defendants Castenaris and Tripodi, Mr. DeKleine, Morgan Funding and Daniel Mackle conspired together, or with other Defendants, to defraud Third Party Plaintiffs by making false promises and statements, and omitted sending important and required loan documents or provided such documents that violated state and federal law.

66. Other mortgage salesmen at Morgan Funding Corp. were using similar fraudulent tactics to get borrowers to take out these loans.

67. On more than fifteen (15) occasions, borrowers were duped by the brokers at Morgan Funding to take out these 12 MTA loans by promising them that the Teaser Rate was the real interest rate for an extended period of time. Mr. DeKleine did this at least three times to different borrowers.

68. Morgan Funding Corp.'s brokers continue to falsely promise and tout the payment rate as the interest rate in loans, even after they closed their operation and opened under another name at the same location with the same employees and even using the same settlement agents.

69. Upon information and belief, Morgan Funding Corp. has sold its business to National Future Mortgage Corp. Many of the same persons who were employed by Morgan Funding now work in the same location closing loans under a company called National Future.

70. To wit, borrower Gina Wardlow-Hill was defrauded on or about November 30, 2007 using the same or virtually the same fraudulent tactics. Ms. Wardlow-Hill is a Plaintiff in a related matter filed in the Federal Court, District of New Jersey.

71. Defendant IndyMac Bank received many complaints, on the phone or by some other medium, from at least one other consumer that other mortgage brokers from Morgan Funding Corp. lied to them about the terms of these OPTION ARMS, which led them to re-finance their mortgages. Some of these complaint(s) occurred before Third Party Plaintiffs borrowed from IndyMac Bank. Many occurred afterwards.

72. Defendant IndyMac Bank received numerous complaints from many borrowers before and after this loan closed that their brokers misled/lied them or failed to explain the real terms of and risks of their Option ARM loans.

73. The Good Faith Estimate, Notes and Riders for the Third Party Plaintiffs' Property violated various state and federal laws, including but not limited to the New York Consumer Fraud Act, the Federal Truth-in-Lending Law and the Federal Real Estate Settlement Practices Act.

74. The Adjustable Rate Note and/or Adjustable Rate Rider executed at the time of the closing of the Third Party Plaintiffs' Property contained false and misleading statements. They include, but are not limited to: language that the borrower's interest rate "may change" when their first scheduled monthly payment was due. Said statements were false and misleading because the Defendants, including but not limited to IndyMac Bank, FSB, Morgan Funding

Corp. and Mr. DeKleine *knew* that the interest rate would change less than sixty days from the date of the closing. This language was on standard forms that likely all consumers were given who received IndyMac Bank's Option ARMs.

75. The Adjustable Rate Rider also contained the false or misleading statements that "I will pay principal and interest payments by making payments every month." Further, the Rider states "Each of my initial monthly payments will be in the amount of U.S. $2,249.75. This amount may change... My initial payment may be an amount that is less than the amount that would be required to repay my unpaid principal on the Maturity Date in full in substantially equal installments." These statements are false or misleading in that principal payments were not required, nor would they occur if the initial payment was all that was paid after the first month. Further, IndyMac Bank knew that by making 360 payments of the initial payment amount would never be able to pay off the loan. In fact, it would inevitably cause default.

76. In other transactions that occurred around the same time as Third Party Plaintiffs' transactions, including; but not limited to the loans of homeowners Zenon Reyes, Milady Restituyo, Dilson Almanzar, Mariano Henriquez, Defendant IndyMac Bank ignored their own lending standards, negligently and/or intentionally overlooked evidence in those loan transactions that borrowers were being misled by Morgan Funding into these transactions.

77. IndyMac Bank created or approved of loan documents used in this Option ARM Program that were misleading and knew, or should have known, that borrowers were confused by them, or would not understand them.

78. The Defendants DeKleine and Morgan Funding Corp. placed Third Party Plaintiffs into "no-document" verification loan(s) because those loans would yield more compensation for them.

79. Defendants DeKleine and Morgan Funding Corp. did not advise Third Party Plaintiffs that the "no document" verification loan(s) would carry a greater interest rate than traditionally verified loan(s).

80. Third Party Plaintiffs should have been advised about the consequences of applying for a "no documentation" loan and explained that a higher interest rate would be charged to them.

81. Morgan Funding Corp. yielded greater compensation when they placed clients into "no-documentation" loans versus traditional loans whereby the borrowers' assets were verified.

82. Morgan Funding Corp. routinely placed their clients in no documentation loans without regard to their creditworthiness.

83. Morgan Funding Corp. tricked many homeowners into taking out Option ARMs by using the same techniques.

84.  IndyMac Bank, Morgan Funding Corp., and Dan DeKleine knew or should have known that the Third Party Plaintiffs did not understand the essential terms of the documents that they were executing or knew that false promises were made to them about the terms of the loan.

85. IndyMac Bank, Ms. Castenaris and Mr. Tripodi, knew or should have known, based on their own review of the subject loan file, and/or previous reviews of other Option ARMs that Plaintiffs were being misled about essential loan terms and/or were not getting what they were promised and/or that the proper and required notices were not timely furnished to Third Party Plaintiffs.

86. Defendants made false promises, assurances, and statements which the Third Party Plaintiffs relied upon, in order to induce them to enter and complete the subject mortgage contract.

87. Defendants, including those at IndyMac Bank and its employees knew that their borrowers were being misled by Morgan Funding Corp.

88. IndyMac Bank aided and abetted the fraud being perpetrated on Third Party Plaintiffs.

89. IndyMac Bank's loan processing and/or underwriting department reviews loans. In the case of Mr. and Mrs. Restituyo, who also refinanced with a different mortgage broker in March of 2006, their loan reviewer signed documents, but did not date them, that were blank and incomplete, evincing that the Bank did not conduct a proper review of its files to insure that homeowners were not being defrauded.

90. IndyMac Bank had instances in which their underwriting department encouraged mortgage brokers to submit false loan applications in other "no-doc" loans. To wit, IndyMac Bank's employee(s) requested social security earnings statements with the amount of monthly income blacked out so that false terms could be inserted on them or so that her true income would be concealed. This occurred on at least one occasion known to Plaintiffs when in approximately November 2004 borrower Elouise Manuel, a retired woman from DeKalb County, Georgia, submitted an application.

91. Upon information and belief, Matt Downey is the IndyMac Bank employee who requested that Ms. Manuel's monthly income be blacked out of her statement attached to her application.

92. IndyMac Bank's spokesman Grove Nichols admitted to a reporter from *Business Week* that this was "an error of judgment" thereby acknowledging that Defendant IndyMac Bank did request that the broker engage in that fraud with Ms. Manuel's application.

93. At least Five Confidential Witnesses, who were former IndyMac Bank employees in both Underwriting and Fraud Investigation Department, have apparently given Affidavits in a pending securities fraud case, Reese v. IndyMac Bank, filed in the Central District of California, under Civil Action Number 07-1635 (GW) in which they allege that fraud was rampant within IndyMac Bank. All allegations concerning the Confidential Witnesses are made upon information and belief.

94. Confidential Witness #1 (CW 1) is a former Vice President and Director of Financial Institutions, Correspondent Lending in IndyMac's Mortgage Banking Segment. CW 1 was employed by IndyMac from July 2003 until January 2006. CW 1 has given an Affidavit that due to IndyMac's desire to keep up with the rest of the players in industry, IndyMac had been forced to become extremely aggressive with its underwriting guidelines and that by January 2006, IndyMac had greatly loosened its underwriting guidelines in order to drive volume and bring in more loan sales.

95. Confidential Witness #2 (CW 2) is a former IndyMac Senior Auditor of the Post Purchase Quality who worked at IndyMac Bank from December 1, 2003 to Jul 19, 2007. He was responsible for reviewing loan delinquencies for fraud or misrepresentation. According to CW 2, he saw evidence of increasing numbers of loans that apparently were issued through fraudulent and misrepresented documentation.

96. According to Confidential Witness #3 (CW 3), a former IndyMac Investigator in their Fraud Department, the quality of the loans originated became a running joke within IndyMac Bank. In particular, certain loans with deficient documentation, or that were issued to buyers unable to pay them back became known as "Disneyland Loans." These loans were called Disneyland Loans because of a loan that was issued to a Disneyland *cashier* who claimed in his

application that he earned $90,000. per year- a proposition on its face that belies logic and common sense given prevailing wage rates for retail cashier operators.

97. According to the Confidential Witnesses, the problem of unqualified loans increased so drastically at IndyMac Bank and did so as a direct result of management's direction that underwriters begin "pushing through" unqualified loans to maintain loan origination volume. The Company's policy of "pushing through" unqualified loans evidences a company wide knowledge of IndyMac's underwriting problems.

98. Confidential Witness Number 5 (CW #5) was an underwriter for IndyMac Bank from March, 2005 until June of 2007. In this position, CW #5 was responsible for writing and reviewing loan applications.

99. According to CW #5, loan originations increased significantly during his tenure with IndyMac Bank. CW #5 directly attributed this increase to relaxed underwriting guidelines and the closing of "questionable deals."

100. CW #5 stated that when he first started at IndyMac, there was a very strict environment regarding loan originations, however, toward the end of his employment, this had evolved into "organized chaos" that was little more than a "free for all" where "anything goes" to get a loan closed.

101. CW #5 stated that Underwriters were encouraged by management to "push through loans" that normally would not be closed. During the originating process, all loans that were not closed and processed because of qualification issues had to be reported to management. Management was consistently giving the "green light" on loans that CW #5 would not have closed. Among other things, CW #5 also noted that appraisal values were adjusted in order to "make a loan work."

102. According to the Confidential Witnesses, IndyMac Bank created policies that directly rewarded underwriters and managers with bonuses for reaching loan origination targets. That is, underwriters were issued bonuses one month after loan targets were reached without regard to whether the loans ultimately ended in default. The Bank policy essentially incentivized the issuance of loans without regard to quality or creditworthiness and encouraged "making deals work" that should not have worked, according to CW #5.

103. IndyMac Bank's apparent company policy which did not care about borrower's creditworthiness, its zeal to close loans at all costs, and its disregard for concern about its investors by issuing loans based on fraud, evinces their company policy to also issue loans to homeowners that were being defrauded by their mortgage brokers. In short, they actively participated in the fraud, or at a minimum tacitly approved of it and reaped the benefits of it.

104. Defendant IndyMac Bank, and their Chief Financial Officer, Scott Keys, and Chief Executive Officer Michael W. Perry, and their Head of Underwriting and Head of Compliance failed to institute proper procedures to ensure that its underwriters and other employees would not allow fraud to occur in the subject transactions.

105. Defendant IndyMac Bank and its employees, including its high ranking ones, such Scott Keys, Michael W. Perry and the IndyMac Bank Head of Compliance and Head of Underwriting knew or should have known that (a) numerous mortgage brokers were misleading or defrauding borrowers into taking out these Option ARM mortgages; (b) that Defendants Morgan Funding and Dan DeKleine were misleading borrowers into taking out these mortgages; (c) that their underwriters were ignoring evidence of fraud or faulty loan review on Option ARM Loans; (d) that the underwriting department even encouraged at least one mortgage broker to commit fraud on at least one occasion as indicated with the incident with Elouise Manuel.

106. Defendant IndyMac Bank and its employees failed to prevent the type of harm inflicted on Third Party Plaintiffs.

107. Defendant IndyMac Bank and its managers, including Michael W. Perry, Scott Keys, and the heads of Underwriting and Compliance established underwriting and compliance procedures that placed speed, efficiency and profitability above making reasonably sure that their borrowers were not being defrauded into taking out these Option ARM loans.

108. In a March 1, 2007 press release Michael W. Perry acknowledged that "given the robust housing market and highly liquid secondary markets (for even the 'riskiest loans') both of which persisted for years longer than anticipated- and given the strong competition in a declining overall mortgage market, IndyMac, in order to compete and grow, also loosened its lending standards, though in a more responsible way."

109. IndyMac Bank's loosened lending standards included not adequately preventing mortgage brokers, such as these instant defendants and others from fraudulently inducing Third Party Plaintiffs and other borrowers into taking out these 12 MAT Loans.

110. Defendant IndyMac Bank trained Morgan Funding's brokers how to sell their 12 MAT Option ARM loan product.

111. At all times, alleged, each Defendant involved in the Third Party Plaintiffs transaction, was the co-conspirator, agent, servant, employee, and/or joint venturer of each of the other Defendants and was acting in the scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each other Defendants involved in this transaction.

112. At all times relevant herein, Morgan Funding Corp. and/or IndyMac Bank, FSB and Bressler & Duyk had an agency-principal relationship.  Therefore, each is responsible for the tortious or illegal actions of the other.

113.  Mohammad Hammeeduddin was an agent for Bressler & Duyk..

114. IndyMac Bank even stationed full-time employees to work alongside Morgan Funding to get loans generated and closed with IndyMac.  These employees knew what was occurring and otherwise aided it.

115. IndyMac Bank trained Morgan Funding and its brokers how to market their product because they were their agent.

116. John Doe No. 3, is a fictitious name for another employee or principal of Morgan Funding Corp. and John Doe No. 4 is a fictitious name for another employee of principal of Morgan Funding Corp..  Upon information and belief, John Does No. 3 and 4, aided, approved, supervised, instructed or worked with the Defendant salesmen in executing these subject loan transactions.

## COUNT ONE

### (Violations of Truth in Lending Act)

117. The Third Party Plaintiffs repeats each and every paragraph(s) of this complaint as if fully set forth herein.  This Count is pled against IndyMac Bank, Dan DeKleine, Dan Mackle and Morgan Funding Corp.

118. At all times relevant hereto, the Defendants, Morgan Funding Corp, IndyMac Bank, Dan DeKlein and Daniel Mackle, and their agents, employees, servants and principals, in the ordinary course of their business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four monthly installments.

119. At all times relevant hereto, Morgan Funding Corp., IndyMac Bank, Dan DeKlein and Daniel Mackle are creditors within the meaning of the Truth in Lending Act, 15 U.S.C. 1602 (f) and Regulation Z 226.2 (a) (17).

120. IndyMac Bank and Morgan Funding Corp. are the persons or entities to whom these transactions which are the subject of this action were initially payable.

121. TILA and Regulation Z mandate that all closed end consumer loans be accompanied by a Truth in Lending disclosure of the material terms; that additional disclosures be provided for Adjustable Rate Mortgage Loans; and that these types of loans be subject to certain additional limitations and protections. TILA requires that the creditors, in extending credit, reveal essential credit terms and appraise consumers of certain terms and conditions of their loans. The TILA covers closed end consumer loans secured by residential property. TILA U.S.C. 1638, 1639; 12 CFR 226.18.

122. IndyMac Bank, Morgan Funding Corp. and Daniel Mackle violated TILA by providing Third Party Plaintiffs with conflicting and misleading loan documents and/or by making false promises and representations which interfered with Third Party Plaintiffs' ability to assess the transactions and/or not providing them with an appropriate and required timely Adjustable Rate Mortgage Brochure and the other detailed ARM information, which must be delivered not later than three business days after the creditor receives the consumer's application pursuant to Reg Z, 226.19(b).

123. Additionally, IndyMac Bank, Morgan Funding Corp. and Daniel Mackle failed to provide the disclosures mandated by 15 U.S.C. 1639 and 12 C.F.R. Sections 226.31, 226.32 in one or more of the following ways:

a.      Defendants failed to provide the required disclosure not less than 3 business days prior to consummation of the transaction in violation of TILA, 15 U.S.C. '1639(b) and Reg. Z '226.31(b), 226.32(c).

b.      Defendants failed to provide these disclosures clearly and conspicuously in writing, in a form the consumer may keep in violation of Reg. Z '226.31(b).

c.      Defendants gave contradictory loan documents and/or made false promises or statements, orally and/or in writing, to all of the Plaintiffs, in contrast to the Disclosures, if any, that were given.

d.      Impaired Third Party Plaintiffs' ability to assess these transactions by not providing him with required Adjustable Rate Mortgage Brochure and the other detailed ARM information must be delivered not later than three business days after the creditor receives the consumer's application. Reg Z. 226.19(b).

e.      Other ways as set forth in the body of the complaint, including but not limited to the false and misleading language in the Notes.

f.      Defendants improperly disclosed the amount financed and interest rate being charged to Third Party Plaintiffs by improperly excluding items from the amount financed on TILA Disclosures.

124.  IndyMac Bank, Morgan Funding Corp., Mr. DeKleine and Daniel Mackle induced Third Party Plaintiffs to re-finance their home for the sole purpose of stripping Third Party Plaintiffs' equity out of their homes. Said practice is known as "mortgage flipping" and it is also prohibited by these referenced federal statutes.

125. Accordingly, Defendants IndyMac Bank, Morgan Funding Corp., Mr. DeKlein and Daniel Mackle's violations of TILA entitle Third Party Plaintiffs to rescind the transactions under 15 U.S.C. §1640 and recoup their closing costs, pre-payment penalties and interest paid and attorneys fees and costs pursuant to 15 U.S.C. §1640.

126. This third party complaint serves as the Third Party Plaintiffs' Notice of Rescission to IndyMac Bank. The Third Party Plaintiffs were forced to re-execute the closing documents in September of 2007. The Third Party Plaintiffs submit that the date that the documents were re-executed should serve to be the date that the statute of limitations begins to run.

127. The actions of these Defendants otherwise violated other Truth in Lending laws, regulations and requirements, under federal law and applicable New Jersey State law. This includes but is not limited to 12 C.F.R. § 226.18 (f); Commentary to § 226.19(b) (2) (v); Commentary § 226.19(2); 15 U.S.C. §1640 (a); 15 U.S.C. §1638; 15 U.S.C. §1632 and other state and federal laws and commentaries.

128. ABC Corp. No. 1 or John Doe No. 6 are believed to have been assigned the Note or Mortgage for the Costa transaction.

129. ABC Corp. No. 1 or John Doe Nos. 6 are liable under TILA because the defects were apparent on the face of the above mentioned documents.

WHEREFORE, Third Party Plaintiffs respectfully demand judgment against Defendants jointly and severally, as follows:

1. An Order or verdict rescinding the transactions and awarding Attorney's Fees, costs and a return of all interest these borrowers paid and all closing costs and pre-payment penalties;

2. Attorney's Fees;

3. Lawful Interest;

4. Cost of Suit; and

5. Statutory Damages for failure to Rescind the transaction;

6. Actual Damages and Statutory Damages; and

7. For such other relief as the Court may deem equitable and just.

## COUNT TWO
(Violations of the New York Consumer Protection Act
from Deceptive Acts & Practices, §349-350, et. seq.)

130. The Third Party Plaintiffs repeat each and every paragraph(s) of the Complaint as if fully set forth herein.

131. The Defendants have intentionally engaged in a conspiracy to, and did commit unconscionable commercial practices, deception, fraud, false pretense, made false promises, misrepresentations, and knowingly concealed, suppressed or omitted material facts from the Third Party Plaintiffs with the intent that the Third Party Plaintiffs rely on such concealment, suppression or omission when entering into mortgage transactions.

132. The Defendants made false promises and misrepresentations concerning the material terms of the subject mortgage contract(s). To wit, they included but are not limited to, false promises and misrepresentations concerning the interest rates and financing terms that they would be given with when they entered the mortgage transactions.

133. False statements and promises of the Defendants includes but is not limited to the false or misleading terms in the Note and Rider prepared by and/or approved by IndyMac Bank in addition to the other closing documents.

134. If Bressler & Duyk were not acting as an attorney for the Third Party Plaintiffs in the re-finance transaction, than they were the closing agent.

135. Said actions of Defendants also violated the RESPA, cited below, which is equal to a violation of law, under the Consumer Protection Act.

136.  The Third Party Plaintiffs at all times relied on the representations of Defendants.

137.  Defendants' actions were acts of misrepresentation, false promise, false pretense, deception, fraud, unconscionable consumer practices, and/or knowing concealment, suppression or omission, all in violation of the New York Consumer Protection Act.  As a proximate result of the conspiracy or actions to defraud the Third Party Plaintiffs and the intentional fraudulent acts and omissions of Defendants, the Third Party Plaintiffs have sustained economic and monetary injuries.

138.  Further, Defendant, IndyMac Bank knew that it was pervasive that its customers were getting tricked into these "12 MAT Option ARM" loans.  Also, IndyMac Bank instituted commercial practices in their underwriting and loan review process which were "organized chaos", a "free for all" "anything goes" atmosphere where detection of fraud was discouraged, and pushing through loans, regardless that homeowners were being deceived, was paramount.

139.  Daniel Mackle hired Mr. DeKleine and knew what he was doing and promising as it was pervasive within Morgan Funding Corp.

140.  Dan Mackle knew his employees were defrauding borrowers.

141.  Dan Mackle oversaw the operations at Morgan and approved of the marketing materials and practices being used to dupe borrowers.

142.  IndyMac Bank created or approved of the language in the Mortgage and Note that was false and/or misleading.

143.  IndyMac Bank placed its employees Ms. Castenaris and Mr. Tripodi into the Morgan Funding Office and these individuals worked with them, trained them and otherwise aided this scam perpetrated on these Third Party Plaintiffs and many others.

144.  IndyMac Bank knew that Morgan Funding or the brokers were defrauding many borrowers but chose to fund these transactions anyway and to profit from them.

**WHEREFORE**, Third Party Plaintiffs demand judgment against Defendants jointly and severally, as follows:

1. Compensatory damages;

2. Treble damages;

3. Punitive damages;

4. Attorney's Fees;

5. Lawful Interest;

6. Cost of Suit;

7. an order rescinding the transaction; and

8. For such other relief as the Court may deem equitable and just.

### COUNT THREE
(Common Law Fraud)

145.    The Third Party Plaintiffs repeat each and every paragraph(s) of the above Complaint as if fully set forth herein.

146.    Defendants' actions as set forth above constitute common law fraud.

147.    The misrepresentations made by Defendants caused the Third Party Plaintiffs to enter into the mortgage transactions.

148.    The Third Party Plaintiffs justifiably relied upon the misrepresentations.

149. The Third Party Plaintiffs suffered damages as a result of the fraud.

150. Defendants' fraud(s) in connection with the mortgage transactions entitles the Plaintiffs to rescind the transactions.

151.    As a result thereof, the Third Party Plaintiffs have sustained damages.

**WHEREFORE**, Third Party Plaintiffs demand judgment against Defendants jointly and severally, as follows:

1.  Compensatory damages;

2.  Punitive damages;

3.  Attorney's Fees;

4.  Lawful Interest;

5.  Cost of Suit;

6.  an order rescinding the transaction; and

7.  For such other relief as the Court may deem equitable and just.

### COUNT FOUR
(Breach of Contract)

152. The Third Party Plaintiffs repeat each and every paragraph of this Complaint as if fully set forth herein.

153. The Third Party Plaintiffs were told by Mr. DeKleine that they would receive the 2.85% percent interest rate for five (5) years, not just the approximate one month period.  Since he did not, the contract was breached.

154. The Third Party Plaintiffs entered into a mortgage contract with IndyMac Bank. The Third Party Plaintiffs were lent money and in exchange Third Party Plaintiffs agreed to repay it pursuant to the terms of the Note.  In addition to the promises made by Morgan Funding Corp., Mr. DeKleine, IndyMac Bank made promises to them in their mortgage contract, the Note and Rider.

155. The Note promised that Third Party Plaintiffs "will pay interest a yearly rate interest at 2.85."

156. The Third Party Plaintiffs' Note and Rider indicated that "I will pay principal and interest by making payments every month."

157. Despite these promises, the Defendants did not honor these contractual terms by applying payment to principal each month.

158. Instead, the regularly scheduled monthly payment was applied to part of the interest that the lender was charging these borrowers and the difference between the amount the lender was charging and the borrowers were paying each month was being added to the loan balance causing the principal to increase rather than decrease.

. 159. The Third Party Plaintiffs were given other documents mentioned herein that mirrored the promises made by the broker / agent of the subject banks.

160. The foregoing conduct of Defendants against the Third Party Plaintiffs constitutes an actionable breach of contract.

WHEREFORE, the Third Party Plaintiffs demand judgment against Defendants jointly and severally, as follows:

1.     Compensatory damages;

2.     Attorney's Fees;

3.     Lawful Interest;

4.     Cost of Suit;

5.     for such other relief as the Court may deem equitable and just;

6.     an order rescinding the transaction;

## COUNT FIVE
### (Violations of RESPA)

161. The Third Party Plaintiffs repeat each and every allegations of the above complaint as if fully set forth herein.

162. Defendants Morgan Funding, through their acts and omissions, violated the Real Estate Settlement Practices Act, ("RESPA") Title 12 USC Section 2601, 2607, and 2617. These actions and omissions include but are not limited to the following and aforesaid actions.

163. RESPA is a disclosure and anti-kickback statute that prohibits a settlement service provider from charging a few when it does not perform any services in return, even when the provider does not split the fee with a third party and also prohibits a single party from marking up third party costs without performing any services in return for, or performing insufficient services to justify, the additional amounts retained.

164. The Defendants charged fees at the closing in excess of those listed on the good faith estimates and/or split fees or paid kickbacks which were not listed on their RESPA Statement.   To wit, Morgan Funding routinely did this.  Bressler and Duyk also did this.

165. Morgan Funding even touted a referral program on its website in which they were promising to pay illegal referral fees to borrowers who referred them other customers.

166. The RESPA statement completed in these transactions was otherwise deficient, improper and not in compliance with federal and state law.

167. The Defendants' charging a higher interest rate than that listed on the Good Faith Estimate violated RESPA.

WHEREFORE, the Third Party Plaintiffs demand judgment against Defendants jointly and severally, as follows:

1.  Compensatory damages;

2.  Treble damages;

3.  Punitive damages;

4.  Attorney's Fees;

5.  Cost of Suit;

6.  For such other relief as the Court may deem equitable and just;

7.  an order rescinding the transaction; and

8.  Lawful Interest;

## COUNT SIX

(Liability of Settlement Agent and other Defendants)

168. The Third Party Plaintiffs repeats each and every allegation set forth above as if fully set forth herein.

169. David Bressler and Bressler & Duyk served as the settlement agent in these three transactions. Their actions harmed Third Party Plaintiffs.

170. Bressler & Duyk charged unreasonable, excessive, exorbitant and otherwise unconscionable fees to Third Party Plaintiffs for whatever services they may have rendered.

171. David Bressler, Esq., knew based on his previous dealings with Morgan and prior litigation filed against him that Morgan Funding as performing a "bait and switch" on these Third Party Plaintiffs by giving them a vastly different mortgage at the closing than what they was promised by Morgan Funding.

172. Bressler & Duyk should have not closed the Third Party Plaintiffs' loans because of what Morgan Funding had promised these Third Party Plaintiffs as well as because of actions that occurred at the closings themselves.

173. Said actions of these Defendants, their agents, servants or employees violated the aforementioned federal and state statutes and were otherwise fraudulent, misleading, constituted a breach of contract and otherwise actionable and harmful to Third Party Plaintiffs.

174. Defendants Bressler & Duyk otherwise aided and abetted or acted directly in furtherance of these actions of and said actions benefited the Defendants, and harmed the Third Party Plaintiffs.

175. Bressler & Duyk were settlement *agents* for IndyMac Bank. As such, they are responsible under respondeat superior theory for any of their negligent or intentional acts that caused Third Party Plaintiffs harm.

WHEREFORE, the Third Party Plaintiffs demand judgment against Defendants jointly and severally, as follows:

1.  Compensatory damages;

2.  Treble damages;

3.  Punitive damages;

4.  Attorney's Fees;

5.  Cost of Suit;

6.  For such other relief as the Court may deem equitable and just;

7.  an order rescinding the transaction; and

8.  Lawful Interest;

### COUNT SEVEN
### (Legal Malpractice)

176. Third Party Plaintiffs repeat each and every allegation set forth in this complaint as if set forth fully herein. However, this particular Count apples to Marc Bressler, Esq., David Bressler, Esq. and Bressler and Duyk as they are the only lawyers, employees of lawyers, or law firms that were directly involved in the Third Party Plaintiffs transactions Their negligence and / or intentional wrongdoing is enumerated, but not limited to, those allegations set forth elsewhere in this complaint.

177.  In their dealings with Third Party Plaintiffs, Marc Bressler, Esq., David Bressler, Esq., Bressler and Duyk accepted payments from Third Party Plaintiffs without regard to the economic harm that was occurring to the Third Party Plaintiffs.

178.  As a proximate result of Defendants' Marc Bressler, Esq., David Bressler, Esq., and Bressler and Duyk's intentional acts or negligent acts or omissions, the Third Party Plaintiffs were harmed.

179.  The foregoing actions of Defendants constitute a breach of Defendants' duty of good faith and fair dealing and further constitutes legal malpractice with damages resulting to Third Party Plaintiffs.

180.  Bressler & Duyk knew that Morgan Funding and the other defendants were defrauding the Third Party Plaintiffs and chose to profit from that fraud.

181.  Bressler & Duyk decided to, and then did, conduct these closings in a manner in which allowed these borrowers to be defrauded.

WHEREFORE, Third Party Plaintiffs demands judgment against Defendants Marc Bressler, Esq., David Bressler, Esq. and Bressler and Duyk jointly and severally, as follows:

1.  Compensatory damages;

2.  Treble damages;

3.  Punitive damages;

4.  Attorney's Fees;

5.  Lawful Interest;

6.  Cost of Suit;

7.  For such other relief as the Court may deem equitable and just.

04/29/08  15:25 FAX 732 494 9464          THE BRESSLER LAW FIRM                                ☑036

## COUNT EIGHT
### (Negligence)

182. Third party Plaintiffs repeat each and every paragraph of this complaint as if set forth fully herein.

183. The foregoing conduct of all of Defendants constitutes actionable negligence.

184. All of the above Defendants owed a duty of care to not harm Third Party Plaintiffs.

185. As a result of Defendants' negligence, as aforesaid, Third Party Plaintiffs have been damaged.

186. Additionally, Dan Mackle as the CEO of Morgan Funding Corp. did negligently hire, retain, supervise or oversee the actions of his brokers and employees.

187. Dan Mackle failed to adequately train, supervise, oversee and negligently retained Mr. DeKlein even though they knew, or should have known that he was misrepresenting to the Third Party Plaintiffs the loan terms.

188. Further, Defendant, IndyMac Bank, FSB failed to perform the required and/or proper review of their loan to ensure that state and federal law was complied with.

189. IndyMac Bank, Tripodi and Castenaris knew or should have known that these Third Party Plaintiffs did not receive the proper loan disclosures or were informed of all of the loan terms.

190. IndyMac Bank, FSB, Tripodi and Castenaris knew or should have known that Third Party Plaintiffs did not receive the proper loan disclosures or informed of all of the loan terms.

191. IndyMac Bank, FSB, Tripodi and Castenaris knew or should have known that these third Party Plaintiffs were misled about the loan terms.

192. IndyMac Bank, FSB, Tripodi and Castenaris failed to exercise the appropriate level of control, review of its employees to ensure that Third Party Plaintiffs were not caused to enter this transaction.

193. IndyMac Bank, FSB, Tripodi and Castenaris failed to adequately train, supervise or retained employees who did not properly review loan files to ensure that their borrowers were being advised of the real terms of the loans they were taking out.

194. The Bressler & Duyk law firm defendants, if found not to be acting as lawyers in the subject transactions and merely acting as settlement agents, were negligent as well, and said negligence is actionable.

195. IndyMac Bank, FSB, Tripodi and Castenaris failed to properly train Morgan Funding Corp. and its salespeople in how to market these loans.

196. Defendants IndyMac Bank, FSB failed to perform the required and/or proper review of their loan to ensure that state and federal law was complied with for the Third Party Plaintiffs closings.

197. IndyMac Bank knew or should have known that Third Party Plaintiffs did not receive the proper loan disclosures or were informed of all of the loan terms.

198. IndyMac Bank knew or should have known that the Third Party Plaintiffs did not receive the proper loan disclosures or informed of all of the loan terms.

199. IndyMac Bank failed to perform the required and/or proper review of their loan to ensure that state and federal law was complied with for the Third Party Plaintiffs' closing.

200. As a proximate result of the aforementioned actions of the Defendants, Third Party Plaintiffs were harmed and such harm was foreseeable.

**WHEREFORE**, Third Party Plaintiffs demand judgment against Defendants jointly and severally, as follows:

1. Compensatory damages;

2. Treble damages;

3. Punitive damages;

4. Attorney's Fees;

5. Lawful Interest;

6. Cost of Suit;

7. an order granting them the right to rescind the transaction;   and

8. For such other relief as the Court may deem equitable and just.

### COUNT NINE
### (Breach of Fiduciary Duty)

201. The Third Party Plaintiffs repeat each and every allegation set forth above as if fully set forth herein. This Count is against Morgan Funding Corp., Dan Mackle, Mr. DeKlein and John Doe Nos. 3-4.

202. Morgan Funding Corp., Dan Mackle and Dan DeKlein owed a fiduciary duty to all of these Third Party Plaintiffs.

203. Defendants Morgan Funding Corp., Daniel Mackle and Dan DeKlein breached their fiduciary duties to the Third Party Plaintiffs.

204. These Defendants breached the fiduciary duties owed to the Third Party Plaintiffs in one or more of the following ways, as well as ways detailed above:

    a.    These Defendants did not disclose all of the loan terms to Third Party Plaintiffs.

    b.    These Defendants did not make sure that the Third Party Plaintiffs understood all of the loan terms before entering into this transaction.

    c.    These Defendants placed the Third Party Plaintiffs into a "no document" verification loan, whereby they would be charged interest higher than what they could have qualified for if proper underwriting review occurred.

    d.    These Defendants made sure that they placed the Third Party Plaintiffs into loans with large mortgage broker compensation, sometimes referred to as "yield spread

premiums" so that the Defendants could maximize the compensation that they received as a result of this re-finance.

e.  These Defendants otherwise placed their own interests ahead of the Third Party Plaintiffs' interests.

f.  Defendants charged or allowed bogus additional monies to be charged for title insurance.

**WHEREFORE**, the Third Party Plaintiffs demand judgment against Defendants jointly and severally, as follows:

1.  Compensatory damages;

2.  Treble damages;

3.  Punitive damages;

4.  Attorney's Fees;

5.  Cost of Suit;

6.  For such other relief as the Court may deem equitable and just;

7.  an order granting rescission of the transaction; and

8.  Lawful Interest;

## COUNT TEN
### (Breach of Covenant of Good Faith and Fair Dealing)

205. The Third Party Plaintiff repeats each and every allegation contained in this complaint as if fully set forth herein.

206. Defendants covenanted to and were required to act in good faith and to act fairly in their dealings with the Third Party Plaintiffs.

207. Defendants breached these covenants and requirements.

208. As a result of these actions, third Party Plaintiffs were harmed.

CERTIFICATION

The following documents are hereby certified:

ANSWER, SEPARATE DEFENSES, COUNTERCLAIM, THIRD PARTY COMPLAINT, RECOVATION OF CONSENT TO SERVICE BY FAX, COMBINED DMENTS FOR DISCOVERY AND INSPECTION, DEMAND FOR A VERIFIED BILL OF PARTICULARS WITH NOTICE PURSUANT TO CPLR 3042(C), DEMAND FOR COPIES OF PLAINTIFF'S FINANCIAL RECORDS.

By: Mercedes Diego, Esq.
Koles, Burke & Bustillo, LLP
Attorneys for Defendants,
Vito V. Costa & Marion P. Costa
233 Broadway, Suite 2200
New York, New York 10279
212/524.6833

**WHEREFORE**, Third Party Plaintiffs demand judgment against Defendants jointly and severally, as follows:

1. Compensatory damages;

2. Treble damages;

3. Punitive damages;

4. Attorney's Fees;

5. Cost of Suit;

6. For such other relief as the Court may deem equitable and just;

7. an order rescinding the transaction; and

8. Lawful Interest;

## JURY DEMAND

Please take notice that Third Party Plaintiff herein demands a trial by jury on all issues presented herein.

Dated: April 10, 2008

By:  Mercedes Diego, Esq.
      Koles, Burke & Bustillo, LLP
      Attorneys for Defendants,
      Vito V. Costa & Marion P. Costa
      233 Broadway, Suite 2200
      New York, New York 10279
      212/524.6833

04/29/08  15:27 FAX 732 494 9464          THE BRESSLER LAW FIRM                          ☐042

## CERTIFICATION

I hereby certify that to the best of my information and belief the matter in controversy is not the subject of any other action pending in any Court of a pending Arbitration proceeding and none are contemplated herein between these individual plaintiffs and the defendants.   However, there are other related causes of action filed by my lawfirm that are pending in the Federal Court, District of New Jersey: Henriquez v. Morgan Funding, et al, under Civil Action Number: 2:06-CV 4812 (PGS) and Almanzar, et al v. Morgan Funding, et al, Civil Action No. 2:06-CV-4479 (PGS), De La Cruz v. IndyMac Bank, et al, Civil Action No. 2:06-CV-2334 (PGS) (ES) and Ortiz, et al v. Morgan Funding Corp. 2:07-CV-5078 (PGS) (ES) and Glover, et. al. vs. Equity Source Home Loans, LLC et. al., Civil Action No 2:07-cv-04629-(PGS)(ES) and Thomas vs. IndyMac Bank, et al, Civil Action No.:  2:07-4653 (PGS)(ES) and Rossi, et al vs. Streamline Mortgage Civ. Action # 07-5876; Thurston v. Morgan Funding, et al Civil Action Number: 08-194; Durino, et al v. Empire Mortgage Services, Inc., et al, Civil Action # 08-293 (PGS) (ES); Almonte v. Morgan Funding Corp., et al, Civil Action Number: 07-5993 (PGS) (ES);  and Fernandez, et al v. Homebank, et al., Civil Action Number: 07-5950; Walton v. Advantage Home Funding Corp., Civil Action 08-318 (PGS) (ES); Fuchs v. Mortgage Line Financial Corp., et al Civil Action  2:08-276 (PGS) (ES), McLaughlin, et al v. IndyMac Bank, FSB, et al Civil Action # 2:09-398-08, Rivera v. Western Thrift & Loan, Civ. Action # 08-0041 (PGS ES) and Zurawski, et al v. Morgan Funding Corp., et al Civil Action # 2:08-cv-794 (PGS)(ES).

I hereby certify that the foregoing statements made by me in are true.  I am aware that if any of the foregoing statements made by me are willfully false that I am subject to punishment.

Dated: April 10, 2008

By: Mercedes Diego, Esq.
    Koles, Burke & Bustillo, LLP
    Attorneys for Defendants,
    Vito V. Costa & Marion P. Costa
    233 Broadway, Suite 2200
    New York, New York 10279
    212/524.6833

# CERTIFICATE OF SERVICE

STATE OF NEW YORK       )
                            ) ss.:
COUNTY OF WESTCHESTER   )

      NICOLE INOCENCIO, being duly sworn, deposes and certifies: that deponent is not a party to this action, is over 18 years of age and resides at Westchester County, New York.

      On the 28th day of May 2008 deponent served the within:

## NOTICE OF REMOVAL

TO:     Mercedes Diego, Esq.
         Koles, Burke & Bustillo, L.L.P.
         Attorneys for Third Party Plaintiffs
         2600 Kennedy Blvd.
         Jersey City, New Jersey 07306

      at the address designated by said attorney for that purpose by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

                                         Nicole Inocencio

Sworn to before me this
28th day of May 2008

_____
       Notary Public

**IRENE F. MONITTO**
A Notary Public, State of New York
No. 01MO6015135
Qualified in Dutchess County
Commission Expires October 26, 20/0

2002629.1